STATE v. W. L. BARCO.

(Filed 17 February, 1909.)

1. **Mainland—Water Ways—Islands—Statutes, Interpretation of.**

    The word "mainland," used in the statute prohibiting a float house to be anchored more than a certain distance therefrom, should be given the definite and precise meaning the word has, "the principal land opposed to island," and indicates there were other lands within the prescribed territory at the time of the passage of the act that did not come within the meaning of the term.

2. **Same.**

    When, at the time of the passage of a statute making it unlawful for one to anchor a float house more than three hundred yards from the mainland, a point of land projecting into the waters of a sound had been cut off by the action of the wind tide, so as to cause a channel forty and more feet wide, sufficient for the passage through it of small boats, and through which the tide flowed, the land thus cut off is an island, and not "mainland," within the meaning of the statute.

ACTION tried before *Guion, J.,* and a jury, at September Term, 1908, of CURRITUCK.

This is an indictment under section 3474 of the Revisal for anchoring a float house in shoal water on the west side of Currituck Sound and more than three hundred yards from the mainland.

John Forbes, a witness for the State, testified: "During the year 1907 I saw the defendant in the float. He was on the eastern side of Duce Quarter Island, after dark. I do not remember the month. It was after November and while he was gunning. He was aboard his float house, after dark. I saw the defendant hunting duck from time to time. I went there on that occasion, after dark, at night; it was on the eastern side, right at the island; it was shoal water. Duce Quarter Island is an island surrounded by water. It is about three miles in length, in some parts about six or seven hundred yards across. The ditch that cuts through is narrow. The creek (or ditch) at the north end is about forty-eight feet wide and at the south end about sixty or seventy-five feet. As you go out of the creek, north, you go into Currituck Sound; on the south, into Duce Island Bay, which empties into Currituck Sound. Cannot say what is the average width, but in some places fifty to sixty or seventy feet; narrowest place is forty-eight feet; tide there is generally by the wind. The water at the mouth is about two feet deep; have never known it to be dry; boats pass through there. After crossing the creek you come to the marsh; then you get to woods. Part of the woodland makes down to the marsh. I was there after dark and saw Barco on his boat. I saw him aboard his float house one night; never saw him but one night; he was anchored right to the island. The land was cultivated. There is one house on Duce Quarter Island. I stayed there that night. Part of it is woods and part of it is marsh, and it goes through to the other marsh. It is called Duce Quarter Island. It is part of Powell's Point; it is the part of Powell's Point that goes right out into the water. There are from forty to fifty acres that can be cultivated. There has been, in my recollection, twenty-five to thirty acres cultivated. Each end of it is marsh and part of it is woods. I think the

creek has been washed larger and larger for years between the island and the land. Several thousand live on Powell's Point. The soil is deeper and land heavier on Duce Quarter Island than on Powell's Point. It is about three miles long, and parts of it are six or seven hundred yards wide. I guess part of it is half a mile wide. The water at average tide is about two feet deep. I remember hearing of Mr. Brumsey cutting a ditch there. I don't know that anybody dug the ditch. The tide passed through it."

William Barco testified: "I have been acquainted for forty years with the creek separating this island. I never saw it dry. After you get inside of the creek the water gets eight feet deep. I have seen five towboats go through it. The island has always been called Duce Quarter Island. It is surrounded by water. The creeks flow into Currituck Sound, and Duce Quarter Bay into the sound. I have seen where the creek or ditch has been cut out. The creek was very crooked. Brumsey cut through this place to get mud. I remember Duce Quarter Island and the people living on it and farming on it. There was a two-story house on it, and also a house a story and a half. Gunners and fishermen have landed on it many years. The ditch was cut out to get what we call marsh turf to put under watermelons."

Mr. Harrison, a witness for the defendant, pointed out on the Government map and located Duce Quarter, and then testified: "When I was a boy, one Mercer owned the place and cultivated and lived on it. Duce Quarter was the same place as I pointed out on the map. Mercer lived in the two-story house near Duce Quarter Bay, on the mainland side. I went up this little bay in front of his house, and he had cut through a large body of marsh to get to his house. I could see no place cut through at that time. It was marsh grass there. It was all bullgrass marsh. This was about 1846. It was called Duce Quarter. Part of the land was in cultivation and part was fenced off for stock. My father and I started, some time between 1862 and 1871, to pass through the slough between Duce Quarter and Powell's Point, in a boat twenty feet long and five or six feet wide, and we could not pass, as the stream between Duce Quarter and Powell's Point was not wide enough to pass through.

At this time Mercer had a store and fish market on this island, and there was a bridge built across this ditch to cross over. It was part of Powell's Point. I never heard it called 'island' then. The bridge was not more than seven or eight feet wide, and buggies and carts could cross it. It is on the west side of Currituck Sound. The land was in cultivation before I was born. I have been there buying corn. . Fishermen and gunners all stop on the east side of Duce Quarter. I saw it yesterday. It is not different from what it was when I first knew it, except the ditch is wider. I know there was a ditch there from 1862 to 1872. I don't say but that nature dug it out. I don't know who dug it out. It was called Duce Quarter Island in 1907. It is divided from the mainland by the water I speak of."

Mr. Bunch, a witness for defendant, testified: "I knew Duce Quarter Island. It was called Duce Quarter when I first knew it. They got to calling it, in late years, Duce Quarter Island. I moved from there eighteen years ago. I had lived on it. When I was on it there were three houses there. I lived on the east side. There was high land on it; some woodland. I have twenty to twenty-five acres in cultivation, but not all could have been cultivated. The narrowest place I knew on the bay was about seven or eight feet wide, and was called 'Cat Hole.' It has gotten wider and wider, caused by the tide and winds."

The defendant requested the court to charge the jury as follows: "If you find that Duce Quarter Island was farm land and woodland and marsh, as testified to, and that the stream of water between Duce Quarter Island and Powell's Point was made by cutting a ditch through part of it and by the tide and winds washing it larger, and that the same was three miles long and from six hundred yards to half a mile wide, and there is land suitable for cultivation on it, then, within the meaning of the statute, it would be mainland, and it would be your duty to find the defendant not guilty." The court refused to give this instruction, and charged the jury that if they found, beyond a reasonable doubt, the facts to be as stated by the witnesses, they should return a verdict of guilty. The defendant excepted. There was a verdict of guilty, upon which judgment was entered, and the defendant appealed.

*Attorney-General* for the State.

*Aydlett & Ehringhaus* for defendant.

WALKER, J., after stating the case: The general rule has been settled by authority that "The object of all interpretation and construction of statutes is to ascertain the meaning and intention of the Legislature, to the end that the same may be enforced. This meaning and intention must be sought, first of all, in the language of the statute itself, for it must be presumed that the means employed by the Legislature to express its will are adequate to the purpose and do express that will correctly." Black's Int. of Laws, p. 35. "It is not allowable to interpret what has no need of interpretation and, when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning" (page 37). The decision of this case turns upon the meaning of the word "mainland," which is used in the statute to express the intention of the Legislature. That word has a single and definite meaning, which is "the principal land—opposed to *island.*" Webster's Int. Dict. We must give it that sense, as, under the rule we have stated, the Legislature is presumed to have intended that to be its true meaning. Besides, the use of the word clearly implies that there is other land in Currituck Sound which is not within the description of "mainland," and that land must be such as is separated or insulated by water from the mainland. This is insular land, or islands. This brings us to the consideration of the other question raised, whether what is called "Duce Quarter Island" is in fact and in law an island or a part of the mainland. At one time, many years ago, it was a part of the mainland, but when the statute in question was enacted, and at the time of the commission of the offense alleged in the indictment, it had been severed from the mainland in the manner described by the witnesses. The owner of the land had dug marsh turf to put under his watermelons, and at the place from which the turf was taken a creek or slough, of the size stated in the evidence, was formed by the action of the wind tide, there being no ocean tide, or ebb and flow of the water, in the sound. The body of land which was cut off by the stream thus formed was about three miles in length and six or seven hundred feet

in width. The stream, which was gradually formed by the washing of the tide, and widened and deepened from time to time, ranges in width from forty-eight to sixty feet and is navigable by small boats. The tide passes through it. It seems to us that the land cut off by this stream is an island, within the meaning of that word, which is defined by the authorities to be "a body of land surrounded by water." 23 Cyc., 357; 17 Am. and Eng. Enc. (2d Ed.), 530, and notes; *Webber v. Boom Co.,* 62 Mich., 626; *Stover v. Jack,* 60 Pa. St., 339. We have attached no importance to the fact that it was called "Duce Quarter Island," but have based our decision solely upon the other facts showing·its physical characteristics.

The case of *Robinson v. Lamb,* 131 N. C., 229, which is cited by the defendant in his brief, does not support his contention, that "Duce Quarter" is a part of the mainland. That case merely decided that "Goat Island" is a part of the territory of Camden County, because it lies northeast of Pasquotank River and is within the general boundaries described in the statute creating Camden County. It is recognized as an island by the Court, though a part of Camden County, for the reason that the water or slough which divides it from the mainland is no part of Pasquotank River. The island may be within the boundaries of Camden County and yet not be mainland. So in this case "Duce Quarter" is an island, though the land composing it may still belong to the person who owned it before it was cut off by the new stream.

We conclude that the court correctly instructed the jury as to the legal effect of their findings of fact.

No Error.