STATE EX REL. T. H. BATTLE ET AL. v. CITY OF ROCKY MOUNT ET AL.

(Filed 18 October, 1911.)

1. **Public Officials—Recorder's Court—Interpretation of Statutes— "Shall"—Legislative Command.**

A legislative act declaring that a recorder's court is thereby created for an incorporated town, which *shall* be presided over by a recorder, with certain qualifications, who *shall* be elected by the board of aldermen at a certain meeting, by using the word *"shall"* throughout in connection with the action of the board in appointing a recorder, plainly indicates the will of the Legislature, in imperative terms, that the board must appoint a recorder for the court created.

2. **Public Officials—Recorder's Court—Election of Recorder—Legislative Command—Aldermen's Discretion—Interpretation of Statutes.**

When the Legislature has created a recorder's court for an incorporated town, the board of aldermen to elect a recorder at a specified meeting, it is not left to the discretion of the board as to whether or not they will elect the recorder, by reason of a provision in the same act that the mayor of the town shall be *ex officio* recorder if the board fail to elect one, the purpose of the proviso being to keep the office full until an election by the board, or until it supplies a vacancy occurring from any other cause, as in case of death or resignation, etc.

3. Interpretation of Statutes—Expressed Intent—Ambiguity.

When the meaning of a statute is clear, or there is no ambiguity, there is no room for construction, and the intention thereof must be gathered from the words employed.

4. Same—Public Officials—Recorder's Court—Election of Recorder by Board of Aldermen—Failure to Elect—Continuous Duty—Power of Courts—Mandamus.

When the Legislature has expressly created a recorder's court for an incorporated town, and in plain terms has required the board of aldermen to elect a recorder therefor at a certain meeting of the board, the board, by failing to act accordingly at the appointed time, may not defeat the legislative mandate, for the duty imposed is a continuing one, time not being of its essence, and the courts will compel it to act, at any time, and do what it has failed to do at the proper or appointed day.

5. Public Officials—Recorder's Court—Election of Recorder by Aldermen—Failure to Elect—Mandamus.

Mandamus will lie to compel the board of aldermen of an incorporated town to elect a recorder for a recorder's court, in the manner prescribed by statute.

6. Same—Ministerial Duties.

A mandamus issued to compel the board of aldermen to act in obedience to the legislative mandate and elect a recorder for a recorder's court which the statute has created, cannot direct when they shall appoint or interfere with discretionary powers conferred upon them, but can only require that they shall act in obedience to the law.

7. Same—Indictment—Common-law Offense—Statutory Offense—Interpretation of Statutes.

A willful neglect or omission of the board of aldermen of an incorporated town to elect a recorder, in the manner required of them by statute, for a court which the statute has created, subjects them to an indictment at common law, and if the neglect, omission, or refusal to discharge this duty is willful and corrupt, it is criminal misbehavior, and subjects them to indictment under our statute for a misdemeanor, punishable by fine or imprisonment. Revisal, sec. 3592.

8. Appeal and Error—Public Officials—Mandamus—Public Interest—Procedure—Power of Court.

When it appears on appeal to the Supreme Court from admitted facts that a board of aldermen of an incorporated town are acting in violation of a command of a statute that they elect a recorder in the manner therein stated, judgment will be

entered in this Court requiring the writ of mandamus to issue, in view of the public interests involved; but in this case the writ is stayed for a reasonable period, so that, if there has been an election in the meantime, the clerk will not issue the writ, but certify the judgment to the Superior Court in the usual manner and form.

APPEAL from NASH from a decree of *Cooke, J.,* heard 28 February, 1911, at chambers.

This is a suit for a writ of mandamus, brought by certain citizens of the city of Rocky Mount to compel its board of aldermen to elect a recorder, as required to do by the Laws of 1899, ch. 209, secs. 24, 25, 26, and 27, in order that a recorder's court may be established and organized according to the terms of the said act, which sections provide as follows:

SEC. 24. That a special court for the trial of misdemeanors is hereby established, and said court shall be known as the "Recorder's Court of Rocky Mount."

SEC. 25. That said recorder's court shall be a court of record, and shall be presided over by a recorder, who shall be a *bona fide* resident and a duly qualified voter of said city, and shall be elected by the board of aldermen of said city at the meeting to be held on the Thursday next succeeding the election for mayor and aldermen, to be held on the first Monday in May, one thousand nine hundred and seven, and biennially thereafter; and such recorder shall hold his said office for a term of two years from the date of his said election and until his successor shall be duly elected and qualified. Pending such election and so long thereafter as the board of aldermen shall fail to fill said office by the election of a recorder, the mayor of said city shall be *ex officio* recorder, and as such shall exercise every power conferred upon and perform every duty imposed upon such recorder by this act.

SEC. 26. That whenever the board of aldermen of said city shall, in accordance with the provisions of the preceding section, elect a recorder, said board shall likewise proceed to elect a vice recorder, who shall possess the same qualifications and hold office for the same term as the recorder; and said vice

recorder shall enter upon and discharge the duties of the office of recorder whenever the recorder, on account of sickness, absence from the city, or other good and sufficient cause, shall be unable to do so, and he shall for the time be clothed with every power conferred by law upon the recorder: *Provided,* that so long as the mayor of said city shall be *ex officio* recorder the mayor *pro tempore* shall be *ex officio* vice recorder, and as such shall be clothed with every power conferred by law upon such vice recorder.

SEC. 27. That the recorder's court shall hold daily sessions in the courtroom of the municipal building in said city, and shall possess every power in the regulation and ordering thereof usually possessed by other courts of record in like cases.

The defendants have never complied with the requirements of this act nor taken any steps to do so, contending that it was left entirely to their discretion whether to fill the office of recorder or permit the mayor to act as recorder, and the mayor *pro tem.* as vice recorder, and they thought it best for the interests of the community to continue the old régime. The Judge of the Superior Court, Hon. Charles M. Cooke, did not agree with defendant's counsel in this construction of the act, and adjudged that the writ of mandamus be issued. Defendant excepted and appealed.

*L. V. Bassett for plaintiff.*
*F. S. Spruill for defendant.*

WALKER, J. We concur with the learned judge in his conclusion of law and in his judgment. The act of 1907 is plainly mandatory. A recorder's court is established by the act, with detailed provisions for the exercise of the jurisdiction conferred upon it. It was clearly intended by the Legislature that the board of aldermen should, at their May meeting next after the passage of the act, elect a recorder. There is not even the scintilla of a discretion given to the board so far. The Legislature had the power to pass the act and it evidently knew precisely what it wanted to do, and expressed itself to that end in unambiguous words, and being composed of fine grammarians, it con-

veyed its meaning to the board in the imperative mood, which is generally supposed to carry a mandate with it. In every section of the act the word "shall" is used to show that the Legislature intended that the board should execute its will and not its own. As an auxiliary, the word "shall" implies a duty or necessity, whose obligation is derived from the person speaking, and is equivalent to an order or direction to do the particular thing, and excluding all idea of discretion or the exercise of the will of the person addressed, so that he may do it or not as seems to him best. He is simply commanded to do it, and his only duty, which, of course, is obligatory, is to obey. The mandate could not be more imperatively given than it was in this case, and why the intelligent gentlemen should have thought otherwise, we are at a loss to know.

Public duties are imposed to be performed, and not to be neglected. It was not the purpose of the Legislature to decide who should be elected as recorder, for that was left to the choice of the board; but in all other respects they are left without any discretion in the matter. It has even been held that when the word "may" is used in a statute, "it will be construed to mean 'shall' or 'must' when public interests or rights are concerned, and when the public or third persons have a claim *de jure,* that the power shall be exercised. And conversely, the word 'shall' may be understood as equivalent to 'may' when no right or benefit to any one depends upon the imperative use of the term." Black Int. of Laws (1896), p. 338; *Jones v. Commissioners,* 137 N. C., 579; 36 Cyc., 1159; 2 Lewis's Sutherland Stat. Con. (2 Ed.), secs. 637, 638, and 640.

How could there be a recorder's court, under the terms of this act and in view of its evident intent, without a recorder? The provision for the mayor to fill any original vacancy was inserted for the purpose of keeping the office full until there could be an election, or to supply a vacancy occurring from any other cause until a recorder could be elected, as in case of death, or resignation. It was not the purpose of that provision to enable the defendants to nullify the act of the Legislature, or to set at naught its declared will. The meaning of the statute

is clear, and where there is no ambiguity, there is no room for construction, and the intention must be gathered from the words employed. *U. S. v. Wittsberger,* 5 Wheat., 76; *U. S. v. Harlwill,* 6 Wall., 386; *S. v. Barco,* 150 N. C., 792, 796; *Fortune v. Commissioners,* 140 N. C., 322; *S. v. Eaves,* 106 N. C., 752; *Adams v. Turrentine,* 30 N. C., 147, 150. "The meaning and intention of the Legislature (and its will) must be sought first of all in the language of the statute itself; for it must be presumed that the means employed are adequate to the purpose, and do express that will correctly." Black Inter. of Laws (1896), sec. 25; *U. S. v. Goldberg,* 168 U. S., 96; *Hamilton v. Rathbone,* 175 U. S., 421. As a corollary of the foregoing proposition, it follows, that "If the language of the statute is plain and free from ambiguity, and expresses a single definite and sensible meaning, that meaning is conclusively presumed to be the meaning which the Legislature intended to convey. In other words, the statute must be interpreted literally." Black, sec. 26.

The purpose of this Court always has been, as shown by its decisions, and ever will be, not to defeat the intention of the Legislature by a forced interpretation, but to construe its enactments so as to execute its will, with punctilious regard for its sovereign right, delegated by the people, to make the law. We say what it is, but they say what it shall be, and when the will of that body is declared, it becomes the duty of every citizen and every official to obey it.

The defendants cannot escape the discharge of the duty enjoined upon them by the plea that, having failed to act at the day fixed in the act, they are discharged altogether from its performance, and thus, by their own willful wrong and neglect of duty, acquit themselves of responsibility. The duty is a continuing one, time not being of the essence of the obligation imposed upon them, and the courts will compel them to do, at any time, what they have failed to do at the proper or appointed day. Any other doctrine would put it in the power of a delinquent officer to defeat the legislative will and repeal a law, and would be nothing less than monstrous. *Grady v. Commission-*

*ers,* 74 N. C., 101; *McCormac v. Commissioners,* 90 N. C., 441; 2 Lewis's Sutherland Stat. Construct. (2 Ed.), secs. 612-16; Black Inter. of Laws (1896), 343; *Julian v. Rathbone,* 39 N. Y., 369.

This much upon the preliminary matters. The other question in the case is whether mandamus will lie to compel obedience to the law. The rule as to the point is that, "Where the duty to be performed is judicial or involves the exercise of discretion upon the part of the tribunal or officer, mandamus will lie to compel such tribunal to take some action in the premises and exercise its judgment or discretion. But the function of the writ is merely to set in motion. It will not direct how the duty shall be performed or the discretion exercised. To do so would be to substitute the judgment and discretion of the court issuing the mandamus for that of the court or officer to whom it was committed by law. No particular act can be commanded, and if the discretion is to act or not to act at all, mandamus will not lie. After the tribunal or officer has exercised the judgment or discretion vested in him, and has acted, mandamus will not lie for the purpose of reviewing the decision and compelling a change of judgment or any further action in the premises. The writ cannot be used for the correction of error. If, however, such judgment or discretion is abused, and exercised in an arbitrary manner, mandamus will lie to compel a proper exercise thereof. So where the law has limited the discretion of a board or officer, mandamus may be used to keep such board or officer within the limits of such discretion. If by reason of a mistaken view of the law or otherwise there has been in fact no actual and *bona fide* exercise of judgment and discretion, as, for instance, where the discretion is made to turn upon matters which, under the law, should not be considered, mandamus will lie. So where the discretion is as to the existence of facts entitling the relator to the thing demanded, if the facts are admitted or clearly proved, mandamus will issue to compel action according to law. If the law involved is purely ministerial and not judicial or discretionary, and if the duty itself is imperative, specific, and well defined, mandamus will

lie not only to compel performance, but in a particular and specific manner. But the duty must be clearly and unmistakably enjoined by law, so that its performance does not involve the exercise of any judgment or discretion." 19 Am. and Eng. Enc. of Law (2 Ed.), 732-741, and numerous cases cited in the notes. This view of the law was adopted by us in *Barnes v. Commissioners,* 135 N. C., 27, where the subject is fully discussed, with a copious array of the authorities in this and other jurisdictions. We there said: "While it is proper by mandamus to set them (the commissioners) in motion and to require their action upon all matters officially intrusted to their judgment and discretion, the courts will in no manner interfere with the exercise of their discretion nor attempt by mandamus to control or dictate the judgment to be given." And again: "If the defendants had neglected or refused to execute the power intrusted to them, we certainly might call upon them to show cause why they had been so negligent, and upon insufficient return might have issued a peremptory mandamus. Here all we could do would be to command them to select the site for the permanent seat of justice for the county, according to law," citing and quoting from *State ex rel. Hill v. Bonner,* 44 N. C., 257.

Advancing a little beyond this proposition, and entering the domain of their discretion, for the purpose of ascertaining and marking the line beyond which the court will not go in ordering a mandamus, which may incidentally control discretion, we said: "It is sufficient for us now to hold, as we do, that the commissioners still have a discretion, and while this discretion must be exercised in a manner fair, candid, and unprejudiced, and not arbitrary, capricious, or biased, much less warped by resentment or personal dislike, it cannot otherwise be controlled by mandamus. The court can only insist on a conscientious judgment being used in the exercise of the power of choosing or rejecting, but cannot itself exercise the power nor substitute its own conscience for that of the board or its own sense of fitness for the approval or disapproval of that other tribunal, for to do so would be in direct violation of the statute. But this

does not mean that they may use this discretion for the purpose of advancing or vindicating their own views or opinions upon the general policy of selling liquor. This policy has been settled by the decision of the Legislature and a vote of the people, to which they must yield a ready obedience, and the discretion must therefore be exercised by them in strict submission to this declared policy, and with scrupulous regard to the right of the applicant to have a fair and impartial hearing and a just decision, whether for him or against him, and, subject to those limitations, they are virtually a law unto themselves."

The rule may be thus briefly stated: Mandamus extends to all cases of neglect to perform an official duty clearly imposed by law, when there is no other adequate remedy. While the court may not control the official discretion of the board, it may compel the reluctant officers to exercise it; and while it cannot direct them in what manner to decide, it may set them in motion and require them to act in obedience to law. *Attorney-General v. Newell,* 85 Me., 246.

So in the case at bar, the duty to proceed to this election, in the manner pointed out, is not a matter of discretion nor dependent upon the judgment of either branch of the Government or of the members of either branch. If it were so, there could be no remedy by mandamus. The court does not attempt to control the judgment and discretion of the individual members, when assembled, in the choice then to be made. But it may properly, by mandamus, require the two branches to meet in convention, as a required preliminary step to the election of some one to this office. Otherwise, the anomaly would arise of a minority of those who must constitute the convention being able to defeat an election if they are only a majority of either branch. See, also, *Morse, Petitioner,* 18 Pick., 443; *Lamb v. Lynd,* 44 Pa. St., 336; *Strong, Petitioner,* 20 Pick., 484; *King v. Norwich,* 1 Barn. and Ad., 310; *Gibbs v. Hampden,* 19 Pick., 298; *Rex v. Cambridge,* 4 Burr., 2008.

The law will not countenance or condone any attempt to defy its mandates. The private citizen must obey the law, and the public officer is not exempt from this duty by any special privi-

BATTLE *v.* ROCKY MOUNT.

lege appertaining to his office. He is not wiser than the law, nor is he above it. The truth is, that if he willfully neglects or omits to perform a public duty, he is liable to indictment at common law. *S. v. Commissioners,* 4 N. C., 419; *S. v. Williams,* 34 N. C., 172; *S. v. Commissioners,* 48 N. C., 399; *S. v. Furguson,* 76 N. C., 197. If the neglect, omission, or refusal to discharge any of his official duties is willful and corrupt, it is criminal misbehavior, and subjects him to indictment for a misdemeanor and punishment by fine or imprisonment, and, as a part of the penalty, to removal from office. Pell's Revisal, sec. 3592, and note.

It is usual to issue an order to show cause or an alternative writ, *ex parte,* and in the first instance, in order that the respondent may explain his conduct; but where sufficient facts are admitted and the special matters pleaded in defense are not a bar to the relief, there is no reason why a peremptory writ should not be sent out. There is no issue of fact to be tried, and the court acts at once and finally upon the admissions of the parties, if they entitle the plaintiff to the writ. This board should no longer be permitted to defy the Legislature and obstruct the due and orderly administration of justice. A peremptory writ commanding the recusant defendants to perform an official duty clearly defined by the law, and which should be well understood by them, is demanded by a just regard for the free will of the people and the regular and decorous conduct of the Government, as well as by the dignity and majesty of the law and the peace and tranquility of society. *Attorney-General v. Newell,* 85 Me., 250. If this statute is undesirable or unsuited to the needs of that community, the board of aldermen are not, for that reason, authorized to disregard it, but an appeal to the Legislature is the only remedy. The members of the board must meet and comply with the mandate of the law; that is their plain duty, and if they fail to perform it, the law will punish their disobedience and enforce obedience to the legislative will in some other effectual way. They must act, and we will compel them to do so, though we cannot dictate or control their choice. A peremptory writ of

mandamus will issue, commanding the board to meet at once and proceed to comply with the requirements of the law.

As this is a matter in which the public has an interest, and as compliance with the law has been so long delayed, we will follow the well-defined precedents and enter judgment here, requiring the writ to issue from this Court. But we are sure that, upon being informed of this opinion and the conclusion of the Court upon this appeal, the defendants will at once comply with the law and elect a recorder. For this purpose, the execution of the judgment will be stayed until 1 November, 1911, and if there has been an election in the meantime, the clerk of the Court will not issue the writ, but certify the judgment of this Court with a copy of this opinion, to the court below, as is usual in other appeals. If for any valid and sufficient reason a further stay is desired, or the usual certificate should be issued, without retention of the case here, an order to that effect, modifying this judgment, may be entered, upon application after notice to the opposing party. The practice of retaining the case here and issuing the writ from this Court is well settled. *Corporation Commission v. R. R.,* 137 N. C., 1, is directly in point, and the several cases of like import are cited therein. In *Caldwell v. Wilson,* 121 N. C., 473, the Court said: "The judgment must, therefore, be affirmed; but in view of the public interests involved, we deem it proper not to remand the case, but to enter final judgment in this Court." See, also, *White v. Auditor,* 126 N. C., 584; Revisal, sec. 1542; Rules 49, 50, and 51 of this Court (140 N. C., pp. 499 and 500).

No error.