C. A. HAMLIN v. C. J. CARLSON, E. L. COX, AND W. P. LOVE.

(Filed 12 November, 1919.)

1. **Statutes—Amendments—Interpretation.**

   Acts amendatory to former acts of the Legislature are construed therewith as one and the same statute.

2. **Same—Chiropractics—Board of Examiners—Discretion—Courts—Mandamus.**

   Chapter 73, Public Laws 1917, establishing a board of chiropractic examiners, gives this board large discretionary powers to examine and license applicants to practice this science, and to pass upon their other qualifications specified therein; and, construed with its amendatory act of 1919, ch. 148, under sec. 2, it is provided that those practicing chiropractics in this State prior to 1918 may receive their license upon proof of good character and proper proficiency upon examination; it is also provided that those so practicing prior to 1917 shall be granted a license without examination. *Held,* neither the proviso of the Laws of 1918 or 1917 dispenses with the discretionary power of the board to pass upon the requisites of good character, or the fact as to whether the applicants thereunder had been *bona fide* practitioners for the requisite time, into which the courts will not inquire, and a mandamus will not lie.

CIVIL ACTION, applying for a writ of mandamus to compel defendants, composing the State Board of Examiners for licensing practitioners of chiropractic in this State, to issue a license to plaintiff, authorizing him to enter on said practice. Certain facts pertinent to the inquiry are embodied in the judgment as follows:

"1. That the defendants constitute the State Board of Chiropractic Examiners, being created and established by the acts of the General Assembly of North Carolina, Public Laws 1917, ch. 73, as amended by chapter 148 of the Public Laws 1919, and as such board are vested with all the powers and duties as prescribed by said acts, among others, being

the duty of examining such applicants for the practice of chiropractic as may present themselves to the aforesaid board, as provided for by the acts creating it, and shall issue a license for the practice of chiropractic to such applicants as they may deem entitled under the several provisions of said acts to receive license enabling them to engage in such practice.

"2. That among other provisions of the said acts creating the Board of Chiropractic Examiners, section 2, chapter 148 of the Public Laws of 1919, contains the following: 'Provided, that any person who had been practicing chiropractic in this State prior to the first day of January, one thousand nine hundred and eighteen, may apply and receive license to practice chiropractic in this State upon proof of good character and proper proficiency upon examination.'

"3. I find as a fact that the plaintiff made application to the defendants, in their capacity as examining board, to be granted a license to practice chiropractic within this State.

"4. I find as a fact that the said defendants, State Board of Chiropractic Examiners, upon considering the application of the plaintiff, in the exercise of their discretion, refused to grant license to the said plaintiff to engage in the practice of chiropractic within this State."

His Honor, being of opinion that the questions presented involved the exercise of discretion on the part of defendant board, entered judgment denying the application, and the plaintiff excepted and appealed.

*L. B. Williams and T. J. Gold for plaintiff.*
*Jerome & Scales for defendant.*

HOKE, J. Under chapter 73, Laws 1917, a State Board of Chiropractic Examiners was provided for to be composed of three practicing chiropractors of integrity and ability, resident in the State, and was given certain supervisory powers on the subject, including the licensing of practitioners therein, etc.

In section 5 of said act, the science of chiropractic is defined and the qualifications of applicants for license are set forth requiring, among other things, that the board shall examine all applicants who shall furnish satisfactory proof of good character and of graduation from a regular chiropractic school of good standing, indicating the course, etc. That every applicant shall, immediately after the passage of this act, furnish to said board sufficient and satisfactory evidence that, prior to beginning of his course in chiropractic, he had obtained a high school education, or what is equivalent thereto, entitling him to admission in a reputable college or university. And he shall also furnish sufficient satisfactory evidence that his diploma from a chiropractic college was

granted on personal attendance and completion of a course of study of not less than 36 months each, and further specifying a prescribed course of study, etc.

By chapter 148, Laws 1919, the above statute was amended by providing, among other things, that the clause requiring a diploma granted from a chiropractic college on satisfactory proof of personal attendance and completion of a course not less than 36 months, should be stricken out, and, in lieu thereof, requiring the applicant to exhibit to the board or satisfy them that he holds a diploma from a regular chiropractic college and not a correspondence school, and that the same was granted on personal attendance and three-year course in such a college, etc.

The later act contains further amendments, among others, in section 2: "*Provided,* that any person who had been practicing chiropractic in this State prior to first of January, 1918, may apply for and receive license to practice chiropractic, upon proof of good character and proper proficiency upon examination," etc., and a further proviso: "That all those practicing chiropractic prior to January 1, 1917, shall be granted license without an examination," etc.

Construing these acts together as one and the same statute, the proper way to consider and interpret them, *Keith v. Lockhart,* 171 N. C., 451, it will appear that this board, created with a view to fix and conserve the proper standards in the practice of this science, are given very large powers concerning it, and that they are authorized to confer license on worthy applicants when it is shown that they are of good character, have a certificate of a high school, entitling him to admission to a reputable college or university, and hold a diploma from a reputable chiropractic college, given after a personal attendance of three-year course in such college, etc.

1. As to those who were bona fide engaged in the practice prior to 1 January, 1918, the school certificate and the college diploma could be dispensed with, and license should issue on satisfactory proof of good character and proficiency, evidenced by examination under such rules as the board might establish.

2. As to those who were bona fide engaged in the practice prior to 1 January, 1917, the examination referred to in the first proviso should be dispensed with.

Both under the first and second provisos, however, the board are authorized and required to pass upon the character of the applicant, and both from the language and the meaning and purport of the law they are necessarily required to pass on the bona fides of the claim that the applicants had been practicing chiropractic prior to 1 January, 1918, in the one case, and 1 January, 1917, in the other. It is urged for the appellant that, under the second proviso, there is no discretion

28—178

vested in the board as to those applicants who had been practicing prior to 1 January, 1917. If it were admitted or clearly established or properly found that applicant, being of good character, had been engaged bona fide in the practice of chiropractic prior to date mentioned, there is no discretion in the board as to requiring an examination with a view of showing proficiency, but, on the facts presented, the question cannot be so restricted. True, there is testimony on the part of plaintiff tending to show he was engaged in the practice prior to the date mentioned, but there is strong opposing evidence to the contrary, and, as we have said, both the good character of the applicant and the bona fides of the claim as to practicing at the time alleged are referred to the board's decision. And, in any aspect of the case, therefore, his Honor was clearly right in refusing to direct or control its exercise.

In *Board of Education v. Comrs.*, 150 N. C., 116, it was held: "That a writ of mandamus will not be granted to compel the performance of an act by a public officer involving the exercise of judgment and discretion," to whom its performance is committed by the Constitution and statutes, citing, among other cases, *Ward v. Comrs.*, 146 N. C., 534; *Glenn v. Comrs.*, 139 N. C., 412; *Barnes v. Comrs.*, 135 N. C., 27; *Ewbank v. Turner*, 134 N. C., 77; *Burton v. Furman*, 115 N. C., 166. As appertaining to the legal questions presented, the Court quotes with approval from reputable authors on the subject, as follows:

"In Abbott on Municipal Corporations, sec. 1108, the principle is thus stated: 'To authorize the writ, the duty must be mandatory and the act sought to be coerced ministerial in its nature. If the officer or governmental agency sought to be coerced is vested by law with discretionary powers as to the doing or not doing of the act sought to be coerced, or in the manner of doing it, the writ will not issue.' And in High on Extr. Legal Remedies (2d ed.), sec. 24, it is said: 'But the most important principle to be observed in the exercise of the jurisdiction by mandamus, and one which lies at the foundation of the entire system of rules and principles regulating the use of this extraordinary remedy, is that which fixes the distinction between duties of a peremptory or mandatory nature and those which are discretionary in their character, involving the exercise of some degree of judgment on the part of the officer or body against whom the mandamus is sought. . . . And whenever such officers or bodies are vested with discretionary powers as to the performance of any duty required at their hands, or when, in reaching a given result of official action, they are necessarily obliged to use some degree of judgment and discretion, while mandamus will lie to set them in motion and to compel action upon the matters in controversy, it will in no manner interfere with the exercise of such discretion or control, or dictate the judgment or decision which shall be reached.' And, again,

in sec. 34: 'An important distinction to be observed in the outset, and which will more fully appear hereafter, is that between duties which are peremptory and absolute, and hence merely ministerial in their nature, and those which involve the exercise of some degree of official discretion and judgment upon the part of the officers charged with their performance. As regards the latter class of duties, concerning which the officer is vested with discretionary powers, while the writ may properly command him to act, or may set him in motion, it will not further control or interfere with his action, nor will it direct him to act in any specific manner.'"

The well considered case of *Battle v. Rocky Mount,* 156 N. C., 329, is in recognition of the same principle.

On careful consideration, we find no reversible error to plaintiff's prejudice, and the judgment of Superior Court is

Affirmed.