STATE OF NORTH CAROLINA v. EARL STEWART ALLEN

No. 70

(Filed 9 May 1973)

1. **Criminal Law § 99— explanation by judge to witness — no expression of opinion**

    Where the solicitor asked a witness to describe the demeanor of one Allen, the witness replied that Allen had an odor of some intoxicants and defendant objected to the witness's answer as not being responsive, the trial court expressed no opinion in explaining to the witness what the word "demeanor" meant.

2. **Criminal Law § 99— instruction to witness to speak up — no error**

    Where the trial court was having difficulty in getting an eyewitness to speak out so he could be understood, the court's instruction to "Talk like you did that night, Mr. Witness. Maybe they can hear you," while not as circumspect as it might have been, was not so objectionable as to constitute prejudicial error.

3. **Criminal Law § 99— witnesses' contact with jurors — instruction against not prejudicial**

    Instruction of the trial court to the sheriff not to let any of the witnesses contact any of the jurors did not constitute error.

4. **Criminal Law § 158— failure to state evidence in narrative form — no error shown**

    Where the record on appeal does not contain a narrative statement of the evidence for defendant, no error is shown in the trial judge's recapitulation of the evidence in the charge to the jury. Rule 19(4), Rules of Practice in the Supreme Court.

5. **Assault and Battery § 15— intent to kill — proper instruction**

    In a prosecution charging defendant with assault with a deadly weapon with intent to kill, inflicting serious injuries not resulting

State v. Allen

in death, the trial court's charge as to intent to kill which included the statements that "intent is a state of mind of the person charged, and is seldom capable of direct or positive proof. You just arrive at it from the conduct of the party, the type of weapon, and the place where it was inflicted, if you find that it was" was substantially in accord with those charges approved by the Supreme Court.

6. **Criminal Law § 154— case on appeal settled — omissions not before court on appeal**

Where it was necessary for the presiding judge to settle the case on appeal, defendant was not prejudiced in any manner by the omission from the record on appeal of three incidents occurring during the trial which had no bearing on defendant's defense; furthermore, these assignments of error could be brought up only upon motion for *certiorari*, which defendant failed to make.

APPEAL by defendant from *Falls, J.,* at the 14 August 1972 Session of Cleveland Superior Court, transferred for initial appellate review by the Supreme Court by order dated 26 March 1973 entered pursuant to G.S. 7A-31(b)(4).

Defendant was charged in a bill of indictment, proper in form, with an assault on L. D. Wagner with a deadly weapon with intent to kill, inflicting serious injuries not resulting in death. Defendant entered a plea of not guilty.

The State offered evidence tending to show: On 18 June 1972 around 8:30 p.m., L. D. Wagner, an officer of the State Highway Patrol, was in the process of arresting Harold Dayberry for operating a motor vehicle while under the influence of intoxicating liquor. Wagner's car was parked on the shoulder of a rural paved road near Casar, North Carolina. Defendant drove up near Wagner's car, got out of his car, walked up to the left side of Wagner's car, and asked if the truck which Dayberry had been driving could be driven away. Wagner noticed a strong odor of alcohol about the person of defendant and told him that the truck could be moved but if he drove it away he would be arrested for driving under the influence of alcohol. At this point defendant reached toward the door of Wagner's car. Wagner immediately got out of his car and informed defendant that unless he left he would be arrested for public drunkenness. As Wagner was walking toward defendant, defendant rushed at him and stabbed him in the back with a knife. Wagner then radioed Officer Bennett, another member of the State Highway Patrol, who arrived at the scene within a few minutes and arrested defendant. Prior to the arrival of Bennett, Wagner observed defendant holding a knife in his

hand. The knife was taken from defendant by Bennett. It had blood on it at that time. This knife was introduced into evidence. Wagner's injuries required six days of hospitalization and necessitated his being absent from work for approximately three weeks.

Defendant did not testify but his wife, his father, and several other witnesses testified in his behalf, and their testimony is summarized in the record as follows: "Officer Wagner had come across the road toward defendant and struck him with the blackjack without reason, that defendant had never run at or cut Trooper Wagner, and that in the course of taking defendant into custody the troopers had beaten him, choked him and hit him with a pistol several times, to his injury, without defendant having resisted them."

The jury returned a verdict of guilty of assault with a deadly weapon inflicting serious injury. From judgment imposing a prison sentence of five years, defendant appealed to the North Carolina Court of Appeals.

*Attorney General Robert Morgan and Assistant Attorney General Walter E. Ricks III, for the State.*

*George S. Daly, Jr., and Walter H. Bennett, Jr., for defendant appellant.*

MOORE, Justice.

Defendant's assignments of error all relate to matters wherein defendant claims the presiding judge unfairly commented on the evidence or otherwise made prejudicial remarks, contrary to the provisions of G.S. 1-180.

In considering these assignments, we apply the following general principles. This statute imposes on the trial judge the duty of absolute impartiality. *Nowell v. Neal,* 249 N.C. 516, 107 S.E. 2d 107 (1959). It forbids the judge to intimate his opinion in any form whatever, "it being the intent of the law to insure to each and every litigant a fair and impartial trial before the jury." *State v. Owenby,* 226 N.C. 521, 39 S.E. 2d 378 (1946). It has been construed to include any opinion or intimation of the judge at anytime during the trial which is calculated to prejudice either of the parties in the eyes of the jury. *State v. Douglas,* 268 N.C. 267, 150 S.E. 2d 412 (1966) ; *Everette v. Lumber Co.,* 250 N C. 688, 110 S.E. 2d 288 (1959). "The trial

State v. Allen

judge occupies an exalted station. Jurors entertain great respect for his opinion, and are easily influenced by any suggestion coming from him. As a consequence, he must abstain from conduct or language which tends to discredit or prejudice the accused or his cause with the jury. G.S. 1-180." *State v. Carter,* 233 N.C. 581, 65 S.E. 2d 9 (1951). See also *State v. Belk* and *State v. Pearson* and *State v. Berry,* 268 N.C. 320, 150 S.E. 2d 481 (1966).

Defendant assigns as error the following specific incidents which occurred during the trial.

[1] First, when Officer Wagner was testifying for the State, he was asked by the solicitor:

"Q. I'll direct your attention now, back to the time when Mr. Allen first came to your patrol car at point 'C' on this diagram and ask you to describe his demeanor at that time.

"A. He had an odor of some intoxicants.

"OBJECTION as not responsive.

"COURT: Demeanor means how he acted, Mr. Witness, not how he smelled."

Defendant contends that the court intimated that a defense witness had an odor of alcohol about him at the time to which he testified. This contention is obviously without merit. Defendant objected to the answer given by the witness as not being responsive. The court, as a result of this objection, simply explained the meaning of the word "demeanor." Wagner had already testified, without objection, that defendant had a strong odor of alcohol on his breath at the time of the alleged assault.

[2] Defendant next contends that the court erred when it stated to defendant's witness Harold Dayberry: "Talk like you did that night, Mr. Witness. Maybe they can hear you." Before this statement was made, the following occurred:

"Q. (By Mr. Daly) State your name, please.

"A. Harold Ray Dayberry.

"COURT: You're going to have to speak up so the jury can hear you.

"Q. Were you out at this store in Casar we have been talking about, sitting in Officer Wagner's patrol car under arrest for operating under the influence?

"A. Yes, sir.

"Q. Did you see the defendant Stewart Allen come up?

"A. Yes, sir.

"Q. Would you tell us what you observed happen between Stewart Allen and Officer Wagner and Officer Bennett? Just what you observed.

"A. Well, Mr. Allen walked up—

"COURT: Raise your voice, please. The jury must hear you.

"A. Mr. Allen walked up and asked Mr. Bennett—I mean, Mr. Wagner, if the truck I had been driving could be moved.

"SOLICITOR: I can't hear.

"Q. Harold, if you would, face the jury, maybe it would help."

After the defendant objected, the court stated:

"COURT: I'm pleading with this witness to talk loud enough for the jury to hear him. The jury must pass on the evidence in this case, and they can't do it if they can't hear it. Do you understand that?

"A. Yes, sir.

"COURT: Well, talk out loud."

Obviously, the court was having difficulty with this witness in getting him to speak out so he could be understood. The statement made by the court to which the defendant objected was clearly an effort to get the witness to speak louder. Since the record does not contain the testimony of defendant's witnesses, we do not know what the testimony disclosed as to the tone Dayberry used on the night in question. The language used by the court, while not as circumspect as it might have been, was not so objectional as to constitute prejudicial error.

" . . . Technical errors which are not substantial and which could not have affected the result will not be held

State v. Allen

prejudicial. *State v. Norris*, 242 N.C. 47, 86 S.E. 2d 916. It is not sufficient to show that a critical examination of the judge's words, detached from the context and the incidents of the trial, are capable of an interpretation from which an expression of opinion may be inferred. *State v. Jones*, 67 N.C. 285." *State v. Gatling*, 275 N.C. 625, 170 S.E. 2d 593 (1969).

See also *State v. Alexander*, 279 N.C. 527, 184 S.E. 2d 274 (1971); *State v. McWilliams*, 277 N.C. 680, 178 S.E. 2d 476 (1970).

[3] The defendant next contends that the court erred in making this statement: "Mr. Sheriff, don't let any of those witnesses contact any of these jurors at all." Defendant contends that by this statement the court intimated that defense witnesses might attempt to speak with the jurors. There is nothing in the record to indicate that the judge was speaking any more to defense witnesses than he was to the State's witnesses. Moreover, this sentence was only a part of a statement made by the judge to the jury when the court recessed for the day. The full statement is as follows:

> "Members of the jury, don't discuss this case or make up your minds about it. Should anything be in the newspaper, I ask you on your honor not to read it. Whatever you arrive at must be limited entirely to what takes place here in the courtroom, not what is on the radio or in the newspapers, or anything. Nobody's going home to look over your shoulder to see if you're going to abide by that instruction, but on your honor, try this case based on this evidence, and nothing else except what takes place in this courtroom, including the instructions of the judge, the arguments of counsel and the evidence. Upon that, base the verdict that you arrive at in the final analysis. You go and come back at 9:30 in the morning, take the seats you now have in the jury box. Everyone else keep your seats until the jurors get out of the building. Mr. Sheriff, don't let any of those witnesses contact any of these jurors at all."

Patently, that assignment is without merit.

[4] Defendant next contends that the court in its charge to the jury implied that the State had proved that the prosecuting witness had been stabbed or cut. When recounting the evidence, the court stated that Sheila Owens, a witness for defendant,

testified that she did not see the defendant stab or cut the
patrolman and that neither did other witnesses for the defend-
ant—naming part of them—and then stated: "Now, you may
have a different recollection. If you do, you take your recol-
lection. That the patrolman Wagner is the only one who testi-
fied that this defendant Allen stabbed him or cut him with a
knife. I don't recall any of the defendant's witnesses seeing
the patrolman cut or stabbed." This is apparently a correct
statement of the testimony. In the case on appeal, the testimony
for the defendant is not brought forward but is only summarized
in a brief statement. Nowhere in the record do we find any-
thing that approximates a narrative statement of the evidence
for the defendant. Under Rule 19(4), Rules of Practice in the
Supreme Court, this is not sufficient. *State v. Prince,* 270 N.C.
769, 154 S.E. 2d 897 (1967); *State v. Powell,* 238 N.C. 550,
78 S.E. 2d 343 (1953). Hence, no error is shown. ·

[5]    Defendant in this same connection further contends that
the court implied that the defendant had used a weapon to
cut the prosecuting witness when the court stated: "You just
arrive at it [intent] from the conduct of the party, the type of
weapon, and the place where it was inflicted, if you find that
it was." The full charge as to intent to kill as given by the
court was as follows:

> "Thirdly, the State must prove that the defendant had
> the specific intent to kill. That is, Allen had the specific
> intent to kill Patrolman Wagner. And in that respect,
> members of the jury, an intent in a criminal act is a state
> of mind which is seldom, if ever, capable of direct or posi-
> tive proof, but it is arrived at by the circumstances of
> just such acts and circumstances as a reasonably prudent
> person would draw therefrom.

> "An intent to kill may be inferred from the nature of
> the assault, the manner in which it is made, the conduct
> of the parties and other relevant circumstances.

> "As I said, an intent is a state of the mind of the
> person charged, and is seldom capable of direct or positive
> proof. You just arrive at it from the conduct of the party,
> the type of weapon, and the place where it was inflicted,
> if you find that it was."

This charge is substantially as approved by this Court in many
well-considered opinions. *State v. Ferguson,* 261 N.C. 558, 135

S.E. 2d 626 (1964); *State v. Cauley,* 244 N.C. 701, 94 S.E. 2d 915 (1956); *State v. Murdock,* 225 N.C. 224, 34 S.E. 2d 69 (1945); *State v. Oxendine,* 224 N.C. 825, 32 S.E. 2d 648 (1944).

[6] The solicitor and the attorney for the defendant were unable to agree, and it was necessary for the presiding judge to settle the case on appeal. G.S. 1-283. Defendant contends that the court erred in refusing to include in the case on appeal reference to three incidents which occurred during the trial. These are as follows:

"a. After selection and impanelling of the jury, the Court welcomed a group of visiting children to the court-room, and expressed the hope that they would return to court from time to time, but not as defendants.

"b. The Court next thereafter inquired of defendant's counsel how many witnesses defendant would present.

"c. During the morning of the second day of the trial, it was interrupted for a time and the plea of one Max Edward Hamrick was heard, in the presence of the defendant's jury. During the course of his plea it developed that defendant Hamrick's driver's license was needed, but was then at the Spindale Prison Unit. The Presiding Judge then asked the witness State Highway Patrolman Bennett in the hearing of the jury to go to Spindale and retrieve the license. Mr. Bennett then left the courtroom. A few minutes thereafter, he returned to the courtroom and conferred briefly with the Presiding Judge at the bench, and then resumed his seat. The Presiding Judge then explained to the jury that he had instructed the Highway Patrolman to go to the prison unit in Spindale to get defendant Hamrick's license, but that it had proved not necessary."

Defendant contends that the court should not intimate that the status of being a defendant is unfortunate or that defendant is required or expected to have witnesses, and that the court should not make an errand boy of a chief prosecuting witness.

It is difficult to see how defendant could have been prejudiced by the omission of these three incidents from the case on appeal. The first incident referred to a group of children visiting the court, and the presiding judge welcomed them and quite properly stated that he hoped they would return to court from time to time but that they would not return as defendants.

The inquiry as to the number of witnesses which the defendant would call—and the defendant did in fact offer the testimony of 13 witnesses—was only to give the presiding judge some idea as to the length of time the trial would require. Patrolman Bennett was the arresting officer in the case in which Hamrick had previously entered a plea of guilty of driving while intoxicated, and it was the duty of this officer after the plea of guilty to pick up defendant Hamrick's operator's license. None of these incidents had any bearing on defendant's defense or tended to prejudice him in any manner. Had the judge seen fit to include these three incidents in the case on appeal, defendant's case would have been in no wise strengthened. Be that as it may, these assignments are not properly before us.

"G.S. 1-284 requires the Clerk of the Superior Court to prepare a transcript of the judgment roll or record proper which is sent up on appeal. Under G.S. 1-283, the judge is given power to settle the case on appeal. Ordinarily, the only supervision which may be exercised over the judge charged with this duty is to see that it is performed. S. v. Gooch, 94 N.C. 982. Errors and omissions in the case on appeal are corrected upon certiorari and cannot be brought up on exception taken at the time the case is settled. Appellant has made no motion for certiorari, and the matter is not reviewable on the present record." Lindsay v. Brawley, 226 N.C. 468, 38 S.E. 2d 528 (1946).

Defendant's exceptions taken at the time the case on appeal was settled are not reviewable on this record.

In the trial we find no error.

No error.