STATE OF NORTH CAROLINA,
v.
MARIO ANDRE PARKER, Defendant.
No. COA09-907.
Court of Appeals of North Carolina.
Filed March 2, 2010.
This case not for publication
Roy Cooper, Attorney General, by Diane Martin Pomper, Assistant Attorney General, for the State.
Paul F. Herzog, for defendant-appellant.
MARTIN, Chief Judge.
Defendant appeals from a judgment entered on his conviction by a jury of failing to register as a sex offender as required by Article 27A of Chapter 14 of the General Statutes and his plea admitting his status as a habitual felon. We find no error.
The evidence at trial tended to show that on 8 December 1998, defendant was convicted of Taking Indecent Liberties with a Child, an offense for which he was required to register as a sex offender. For this conviction, defendant was committed to the Department of Correction until 3 August 2000, at which time he was released. On 14 August 2000, defendant registered as a sex offender, as he was required to do. At that time, he gave his address as 7290 Old Mintz Highway in Garland, which is located in Sampson County, North Carolina. On 29 August 2006, defendant completed an Address Verification Notice Form, on which he was required to verify his current address, and indicated that 7290 Old Mintz Highway remained his current address.
At no time between 30 August 2006 and 13 December 2006 did defendant inform the Sampson County Sheriff's Office of a change in his address. On 12 December 2006, defendant was arrested in Jacksonville, North Carolina on a separate charge. While he was being processed, he gave his address as 1814 Burgaw Highway, Jacksonville, North Carolina. In January 2007, defendant gave a statement in which he indicated that "he had been in Jacksonville since the summer of 2006" and, though he had moved home, he had returned to Jacksonville after Thanksgiving for work. In November 2007, defendant told Donald Norman Wringley ("Officer Wringley"), a surveillance officer with the Sampson County Probation and Parole Office, that he went to Jacksonville in October of 2006 to work and live with a family member at 335 Eastwood Drive.
As a result of this evidence, the jury found defendant guilty of failing to comply with N.C.G.S. § 14-208.11, the sex offender registration law. Subsequently, defendant pled guilty to being a habitual felon. The trial court made findings in mitigation and sentenced defendant to imprisonment for a minimum of 80 months and a maximum of 105 months. Defendant appeals.
In his brief, defendant first attempts to argue that the trial court committed prejudicial error when it ordered certain documents to be included in the record on appeal. His argument, however, is not properly before us. Upon timely request of either party to an appeal, the trial court has the power to settle the record on appeal. N.C.R. App. P. 11(c). "Ordinarily, the only supervision which may be exercised over the judge charged with this duty is to see that it is performed." State v. Allen, 283 N.C. 354, 362, 196 S.E.2d 256, 261 (1973) (internal quotation marks omitted); see also State v. Johnson, 298 N.C. 355, 372, 259 S.E.2d 752, 763 (1979) ("[T]he action of the trial judge in settling the record is final and will not be reviewed on appeal"). "Errors and omissions in the [record] on appeal are corrected upon certiorari and cannot be brought up on exception taken at the time the case is settled." Allen, 283 N.C. at 362, 196 S.E.2d at 261 (internal quotation marks omitted).
In the present case, the State, through Assistant District Attorney Weddle, requested the trial judge to settle the record on appeal on 23 June 2008. After a hearing on the matter, the trial judge settled the record pursuant to Rule 11(c) of the North Carolina Rules of Appellate Procedure. Defendant has not petitioned this Court for certiorari; thus, his argument challenging the inclusion of these documents is not properly before this Court and we will not consider it.
Defendant next argues that the trial court erred when it failed, ex mero motu, to order a hearing on his capacity to proceed both prior to trial and prior to jury deliberations. He contends that the record clearly reveals his serious mental health issues, requiring the trial court to inquire further. We disagree.
"[A] conviction cannot stand where defendant lacks capacity to defend himself." State v. Heptinstall, 309 N.C. 231, 236, 306 S.E.2d 109, 112 (1983) (alteration in original) (internal quotation marks omitted). "The question of the capacity of the defendant to proceed may be raised at any time on motion by the prosecutor, the defendant, the defense counsel, or the court." N.C. Gen. Stat. § 15A-1002(a) (2009) (emphasis added). Even where no party raises the issue of the defendant's capacity to proceed, the "trial court has a constitutional duty to institute, sua sponte, a competency hearing if there is substantial evidence before the court indicating that the accused may be mentally incompetent." Heptinstall, 309 N.C. at 236, 306 S.E.2d 112 (internal quotation marks omitted). "In other words, a trial judge is required to hold a competency hearing when there is a bona fide doubt as to the defendant's competency even absent a request." State v. Staten, 172 N.C. App. 673, 678, 616 S.E.2d 650, 654-55, appeal dismissed and disc. review denied, 360 N.C. 180, 626 S.E.2d 838 (2005), cert. denied, 547 U.S. 1081, 164 L. E. 2d 537 (2006). A defendant is competent to stand trial if he has the "capacity to comprehend his position, to understand the nature of the proceedings against him, to conduct his defense in a rational manner and to cooperate with his counsel so that any available defense may be interposed." State v. Jackson, 302 N.C. 101, 104, 273 S.E.2d 666, 669 (1981).
Defendant's attorney requested the trial court to order an evaluation of defendant's capacity to proceed on 12 December 2007 in connection with another case in which defendant faced criminal charges. An evaluation of defendant was subsequently conducted by Dr. James Groce ("Dr. Groce"), a forensic psychiatrist with Dorothea Dix Hospital. In his Forensic Outpatient Consultation Summary, Dr. Groce indicated that defendant "is currently capable of proceeding to trial." Though the motion to have defendant evaluated was filed in a different case, the report as to defendant's competency was filed in the present case on 13 February 2008. Despite this report, defendant contends that additional evidence, in combination with his actions at trial, was substantial evidence indicating his incompetence to proceed, requiring the trial court to intervene.
In support of his contention, defendant points this Court to various statements made by the defendant to the trial court. The first of these statements occurred prior to trial as defendant was attempting to request additional time to hire a new attorney. In his brief, defendant's appellate counsel characterizes this address to the trial court as an "illogical, irrelevant `rant.'" However, we do not share defendant's view of this statement. Instead, it appears that defendant was clearly trying to explain to the trial court his desire to get all of his paperwork from Sampson Correctional to give to his lawyer and his request to have time for his father to hire a new lawyer. Though some of defendant's statements during this address to the trial court may seem irrelevant to these requests, when viewed as a whole, defendant's statements reveal that he was aware of the proceedings and possessed a desire to have time to fully understand all the aspects of his case.
The next statement to which defendant cites occurred before opening statements as the parties were discussing stipulations. In discussing defendant's stipulation as to his conviction of indecent liberties, the trial court asked defendant if he allowed his attorney to make the stipulation. Defendant indicated that he did and then asked the trial court to allow him to get his papers from the jail because there was a discrepancy in his paperwork and the paperwork his attorney had. The trial court then granted defendant's request. These statements indicate that defendant wanted to be able to fully assist his attorney in his representation and do not indicate that defendant was mentally incapable of proceeding.
The last incident pointed out by defendant's appellate counsel in his brief occurred during the discussion between the trial court and the attorneys regarding the jury instructions. At this time, defendant was allowed to address the trial court about his contentions with the use of the word "child" in the jury instructions. According to appellate counsel, defendant then "veered off into yet another extended, rambling speech." However, viewing defendant's statement in the context of the proceedings, it is evident that defendant was merely expressing his desire that reference to his prior charge of indecent liberties not include the word "child" since he was told that the victim in the underlying case "was not no 11-year-old girl." Though these statements may appear unnecessary, they indicate that defendant was aware of the proceedings and able to express his concerns.
Finally, defendant argues that the trial court should have ordered an evaluation of his competency, ex mero motu, based on a letter written by defendant's aunt, who works in the mental health field. In this letter, she indicated that defendant "has a serious mental health issue," poor "insight," and poor "[r]eality testing." However, having "mental health issues" alone does not indicate that a person is incompetent to stand trial. See State v. Badgett, 361 N.C. 234, 261, 644 S.E.2d 206, 222, cert. denied, 552 U.S. 997, 169 L. E. 2d 351 (2007) ("Though the record confirms that defendant was treated for anger management and depression prior to trial, this is insufficient to establish a lack of competency"); see also Heptinstall, 309 N.C. at 233-35, 306 S.E.2d at 110-12 (affirming the trial court's determination that the defendant, who had been diagnosed with paranoid schizophrenia, was competent to stand trial when a forensic psychiatrist testified that the defendant was aware of "the charges against him, . . . had a good memory," and "was alert [and] aware of his surroundings"). Thus, viewing the record as a whole, "[w]e conclude that the evidence referenced by defendant did not constitute `substantial evidence' requiring the trial court to institute a competency hearing." Badgett, 361 N.C. at 260, 644 S.E.2d at 221. This is especially true when this evidence is viewed in connection with other evidence in the record indicating defendant was able to confer with his attorney regarding his case, was able to address the trial court's questions appropriately, and was able to understand the nature of the proceedings against him. Thus, we conclude that the trial court was not required to order a competency hearing ex mero motu.
Defendant next appears to argue that the trial court erred by failing to conduct a competency hearing, ex mero motu, prior to taking his habitual felon plea, or, alternatively, that the trial court erred in failing to strike defendant's plea. Defendant contends that his actions immediately prior to his plea, combined with his actions prior to trial and during trial, supplied the trial court with substantial evidence of his incompetence to proceed, requiring the trial court to conduct a hearing before taking his plea, or alternatively, to strike his plea. We disagree.
As we have stated above, defendant's conduct prior to trial on the charge of violating N.C.G.S. § 14-208.11, during trial, and prior to the jury deliberations gave the trial court no reason to believe that defendant was incompetent to proceed. Likewise, we do not believe defendant's conduct prior to his habitual felon plea rises to the level of substantial evidence of defendant's incompetence to proceed. In fact, defendant's address to the trial court after he first indicated his desire not to plead guilty to being a habitual felon reveals that defendant was well aware of the ramifications of being found guilty of this charge. Defendant merely wanted the opportunity to get a new lawyer for this portion of his trial. The fact that defendant questioned why he had not been psychologically evaluated at Dorothea Dix or was not on medication does not, in and of itself, create a bona fide doubt as to defendant's mental competency to accept the plea, especially in light of the fact that defendant appeared aware of the charges against him and was able to articulate his request. Moreover, the fact that defendant further accused the trial court of having a "vendetta against" him simply reveals defendant's frustration with the trial court's ruling. Though this course of action may not have been appropriate, it in no way indicates that defendant was mentally incapacitated.
Finally, defendant's statements regarding his medication and treatment for depression do not suggest defendant was mentally incapable of entering the plea. Badgett, 361 N.C. at 261, 644 S.E.2d at 222 (finding that treatment for depression "is insufficient to establish a lack of competency"). Instead, as the trial court acknowledged, it appeared that defendant just had something he wanted to express to the trial court. Following this soliloquy, defendant was able answer the trial court's questions articulately. In fact, when asked if his lawyer had explained the implications of his plea and what went into calculating the habitual felon status, defendant replied, "Yes, sir; but  yeah; I mean, exactly. I was just read up on some things and I thought it had to be three of the same felonies, but, yes, sir." Thus, defendant appears to have been able to assist his attorney and was even able to research certain aspects of his case on his own. Accordingly, we do not find that there was "substantial evidence before the court [prior to defendant's plea] indicating that [defendant] may be mentally incompetent[,]" and the trial court did not err in failing to conduct a competency hearing before accepting defendant's plea. Heptinstall, 309 N.C. at 236, 306 S.E.2d 112 (internal quotation marks omitted). Additionally, as we have found that there was no good reason to think defendant was mentally incompetent to accept the plea, the trial court did not err in failing to strike defendant's plea as to his status as a habitual felon. See State v. Branner, 149 N.C. 559, 562, 63 S.E. 169, 170 (1908) (finding that the trial court has "the power to set aside the plea of guilty if it was entered unadvisedly or improvidently, or for any other good reason").
Defendant finally contends that he was denied his right to effective assistance of counsel. He argues that, in light of the evidence indicating his incompetence, he was prejudiced by his trial counsel's failure to move for a competency hearing before trial, before jury deliberations, and before his plea. We again disagree.
In State v. Braswell, our Supreme Court held that, in order to attack his conviction on the basis of ineffective assistance of counsel, the defendant must
[f]irst . . . show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

State v. Braswell, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (quoting Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, reh'g denied, 467 U.S. 1267, 82 L. E. 2d 864, (1984)). Moreover, "if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." Id. at 563, 324 S.E.2d at 249. Generally, an ineffective assistance of counsel claim is better addressed in a motion for appropriate relief and not on direct appeal. State v. Stroud, 147 N.C. App. 549, 553, 557 S.E.2d 544, 547 (2001), cert. denied, 356 N.C. 623, 575 S.E.2d 758 (2002). However, "[ineffective assistance of counsel] claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." State v. Fair, 354 N.C. 131, 166, 557 S.E.2d 500, 524, reconsideration, stay of mandate and withdrawal of opinion denied, motions to file additional briefs dismissed as moot, 354 N.C. 576, 558 S.E.2d 862 (2001), cert. denied, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). Based on the record before this Court, we have determined that defendant's appeal can be decided on the merits.
Defendant argues solely that his counsel was ineffective because he failed to make a motion for a competency hearing. Defendant's trial counsel, on 12 December 2007, did in fact make a motion to the trial court to have defendant's capacity to proceed evaluated. Though this motion references a different case number, the record shows that the subsequent evaluation was filed with the trial court in the present case. Additionally, before trial, defense counsel told the court that defendant wanted "to address the Court in terms of his competence to proceed," and even presented the trial court with the letter from defendant's aunt. Moreover, as stated above, the record was insufficient to suggest defendant's incompetency. Therefore, defendant has failed to demonstrate how his trial counsel was deficient in failing to request a competency hearing. See State v. Beckham, 145 N.C. App. 119, 126, 550 S.E.2d 231, 237 (2001) (finding that the defendant had not shown that his trial counsel was deficient in failing to demand a competency hearing when "there was insufficient evidence at trial of defendant's incompetency.").
No Error.
Judges HUNTER and ERVIN concur.
Report per Rule 30(e).