IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-185

No. COA20-330

Filed 4 May 2021

Yancey County, Nos. 12CRS050662-63, 13CRS000036-38

STATE OF NORTH CAROLINA

v.

JOHN CHARLES HENSLEY

Appeal by Defendant from judgments entered 2 July 2015 by Judge Gary M. Gavenus in Yancey County Superior Court. Heard in the Court of Appeals 9 February 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Kindelle M. McCullen, for the State-Appellee.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender David W. Andrews, for Defendant-Appellant.*

COLLINS, Judge.

¶ 1        This appeal arises from Defendant's conviction for five counts of taking indecent liberties with a minor. Defendant argues that the trial court erred by failing to intervene ex mero motu during the State's closing argument. We discern no error.

## I.    Procedural History and Factual Background

¶ 2        On 4 February 2013, Defendant John Charles Hensley was indicted on seven counts of taking indecent liberties with a minor, one count of a statutory sex offense

with a person who is 13, 14, or 15 years old by a defendant at least 6 years older, and one count of sexual battery. On 29 June 2015, Defendant's case came on for jury trial.

¶ 3 The evidence at trial tended to show the following: In the fall of 2012, Rebecca and Stephanie[1] resided in Yancey County with Defendant, who is their biological father; their stepmother; and their two half-brothers. Rebecca was in the 11th grade and Stephanie was in the 12th grade. The girls visited their mother every other weekend and during the summers. In September 2012, a representative from the girls' school called Defendant to inform him that Rebecca had exchanged text messages of a sexual nature with a boy from another school. Defendant picked up Rebecca's phone from the school and confronted Rebecca a week and a half later. He punished her by assigning her chores and an essay to write.

¶ 4 Several days later, after the girls returned from a weekend visit with their mother, Defendant asked Rebecca for the passcode to her phone. Rebecca refused to give it to him, and they argued until Defendant slapped Rebecca on the face. During the incident, Stephanie texted their mother to tell her what was happening, and their mother called the police. Deputy Tommy Fortner of the Yancey County Sheriff's Office came to the house later that evening and spoke to each girl outside on the porch.

---

[1] Pseudonyms are used to protect the minors' privacy.

¶ 5        The following day, Stephanie gave three letters to her teacher and two friends, disclosing that Defendant had inappropriately touched her.  Stephanie had written these letters prior to the incident between Rebecca and Defendant because she "was getting tired of everything, of the emotional torment [she] was having."  Detective Brian Shuford was assigned to the case after the Yancey County Department of Social Services received a sexual abuse report from the girls' school.  Shuford and a social worker interviewed each girl separately.

¶ 6        Rebecca testified at trial that Defendant regularly made statements to her that made her uncomfortable.  He repeatedly made fun of the size of her breasts, pulled at her shirt, and told her that her breasts were small.  Rebecca described one incident that occurred when she was in 9th grade, testifying that she was doing homework in the computer room late at night when Defendant came in and sat down next to her.  Defendant moved his seat behind her, pushed up her tank top, and touched her breasts for a long time.  Rebecca testified that she had not asked Defendant to touch her anywhere on her stomach or breasts, and that she did not want him to touch her.  She explained that she had never previously told anyone about the incident because she "was embarrassed and disgusted with [her]self."

¶ 7        During Defendant's interview with Shuford on 2 October 2012, Defendant said that he had been aggravating Rebecca about the size of her breasts and comparing them to Stephanie's.  Defendant brought up the incident in the computer room and

said that Rebeca had been complaining about menstrual cramps so he had rubbed her stomach underneath her shirt. Defendant testified that he felt Rebecca's ribcage with the heel of his hand and that he may have unintentionally touched her breast because he did not have feeling in his hand. While Defendant was testifying, the prosecutor asked Defendant to adjust the microphone, which he did successfully. The prosecutor then pointed out to the jury that Defendant could adjust the microphone on the witness stand and open candy wrappers at the defense table, but Defendant still denied possessing feeling in his hands or fingers.

¶ 8        Stephanie testified that Defendant touched her inappropriately beginning in the 6th grade when she was approximately 12 years old. She said that Defendant first came into the room she shared with Rebecca at night, lifted her shirt up, and began touching her breasts. According to Stephanie, this happened repeatedly during her 6th grade year. At the time, she only told her best friend, who immediately stopped speaking to her. She then explained that during her 7th grade year, Defendant began touching her vaginal area in addition to her breasts. She testified that Defendant would kiss, bite, and lick her breasts. Stephanie explained that this behavior stopped when they moved into a smaller house where she and Rebecca slept in the living room, but after they moved again, two more incidents occurred between January and February 2010.

¶ 9        During one incident, Defendant came into Stephanie's room and began

touching her breasts and vagina. Stephanie started kicking Defendant, trying to make him stop, but he told her to relax and continued touching her. Eventually, Stephanie hit her head on the wall, and Defendant left after his wife called out asking if everything was okay. Defendant denied ever touching Stephanie's vagina or putting his mouth on her breasts. He testified that if he ever touched her breasts with his hands, it would have been inadvertent.

¶ 10        After the close of all evidence, the State delivered its closing argument wherein the prosecutor stated that Defendant's excuse for possibly touching his daughters' breasts—that he lacked feeling in his hands and fingers—was "ridiculous." He explained that Defendant could adjust a microphone and open candy wrappers, which Defendant demonstrated during the trial. The prosecutor also stated that the fight between Defendant and Rebecca over her phone occurred because "he wanted to get in, and I guess see what was in there, what those pictures were, what those text messages were." He explained, "it makes a lot more sense when you put it in the context of a father who has a sexual attraction to his daughters." Defendant did not object to any of the statements made during State's closing argument.

¶ 11        On 1 July 2015, the jury found Defendant guilty of five of the seven indecent liberties charges and acquitted him of the remaining charges. The court sentenced Defendant to five consecutive sentences of 16 to 20 months' imprisonment. Defendant failed to give timely written notice of appeal from his conviction and sentencing, but

he filed a petition for writ of certiorari on 18 June 2019. This Court granted Defendant's petition on 1 July 2019.

## II. Discussion

Defendant argues that the trial court erred by failing to intervene ex mero motu during the State's closing argument when the prosecutor characterized Defendant's testimony as "a ridiculous excuse" and argued that Defendant wanted to access Rebecca's phone to look at inappropriate photos of her.

When a defendant fails to object at trial during a closing argument, the defendant must demonstrate that the argument was "so grossly improper that the trial court committed reversible error in failing to intervene *ex mero motu* to correct the error." *State v. Williams*, 317 N.C. 474, 482, 346 S.E.2d 405, 410 (1986). "To make this showing, [a] defendant must demonstrate that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair." *State v. Campbell*, 359 N.C. 644, 676, 617 S.E.2d 1, 21 (2005) (quotation marks and citation omitted). "The control of the arguments of counsel must be left largely to the discretion of the trial judge, and the appellate courts ordinarily will not review the exercise of the trial judge's discretion in this regard unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury in its deliberations." *State v. Johnson*, 298 N.C. 355, 368-69, 259 S.E.2d 752, 761 (1979) (citations omitted).

¶ 14    Counsel's argument is improper if counsel "become[s] abusive, inject[s] his personal experiences, express[es] his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make[s] arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice." N.C. Gen. Stat. § 15A-1230(a) (2019). Counsel "may, however, on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue." *Id.* "Within these statutory confines, [the court has] long recognized that prosecutors are given wide latitude in the scope of their argument and may argue to the jury the law, the facts in evidence, and all reasonable inferences drawn therefrom." *State v. Huey*, 370 N.C. 174, 180, 804 S.E.2d 464, 469 (2017) (quotation marks and citations omitted). "In determining whether [an] argument was grossly improper, th[e] [c]ourt considers the context in which the remarks were made, as well as their brevity relative to the closing argument as a whole[.]" *State v. Taylor*, 362 N.C. 514, 536, 669 S.E.2d 239, 259 (2008) (quotation marks and citations omitted).

¶ 15    In *Taylor*, the prosecutor's remarks during closing argument were not grossly improper where the prosecutor expressed disbelief regarding defendant's claim that he fired a gun without aiming. *Id.* Specifically, the prosecutor said to the jury, without objection from defendant, "I know that you didn't believe it, just like I don't," referring to the defendant's version of events. The Supreme Court concluded that

"[a]lthough the prosecutor should not have indicated his personal disbelief of defendant's statement, given the overall context and the brevity of the remark, it was not 'so grossly improper' as to render the proceeding 'fundamentally unfair.'" *Id.* at 537, 669 S.E.2d at 259-60 (citation omitted).

¶ 16     In *Campbell*, the prosecutor's remarks implying that defendant intended to rob a store were not grossly improper where the prosecutor, citing certain evidence rhetorically asked, "Is it too far of a leap to say that he was bent on robbing that place when he had $5.31 in a brown bag, and whatever change is in this one?" 359 N.C. at 675, 617 S.E.2d at 21. As the prosecutor could reasonably argue the inference from the evidence that defendant was staking out the store in order to rob it, the remarks "were not so grossly improper as to require intervention *ex mero motu* by the trial court." *Id.* at 676, 617 S.E.2d at 21.

¶ 17     Here, the prosecutor's categorization of Defendant's testimony as "a ridiculous excuse" was a small part of an otherwise proper argument that the jury should not believe Defendant's claim that a lack of feeling in his fingers prevented him from knowing if he had touched his daughters' breasts, because Defendant demonstrated that he could utilize his fingers effectively by adjusting the microphone on the witness stand and unwrap and squeeze little candies out of their packaging at the defense table. Additionally, the prosecutor used the word "ridiculous" only twice in his closing argument, which totaled 16 pages of trial transcript. Although the prosecutor should

not have expressed his personal belief that Defendant's testimony was false, *see* N.C. Gen. Stat. § 15A-1230(a), as in *Taylor*, given the overall context and the brevity of the remarks, his remarks were not "'so grossly improper' as to render the proceeding 'fundamentally unfair.'" *Taylor*, 362 N.C. at 537, 669 S.E.2d at 259-60 (citation omitted).

¶ 18 Additionally, the prosecutor's argument that Defendant wanted to access Rebecca's phone to look at inappropriate photos was a reasonable inference from the evidence introduced at trial. The evidence showed the following: Defendant would look at and talk about Rebecca's breasts; Defendant would pull at her shirt, usually from the top, and say her breasts were small; when Rebecca was fourteen, Defendant sat down beside her while she was doing her homework on the computer and pushed up her tank top and touched her breasts. This evidence permitted the prosecutor to argue the inference that Defendant had a sexual attraction to his daughter and would be interested in accessing her phone to view sexual photos of her. Accordingly, the prosecutor's argument was not improper and, as in *Campbell*, the trial court was not required to intervene ex mero motu. *See Campbell*, 359 N.C. at 687, 617 S.E.2d at 28.

### III. Conclusion

¶ 19 The trial court did not err by failing to intervene ex mero motu during the State's closing argument where the prosecutor's categorization of Defendant's

testimony as "a ridiculous excuse" was not grossly improper and the prosecutor's argument that Defendant wanted to access Rebecca's phone to look at inappropriate photos was not improper.

NO ERROR.

Judges GORE and JACKSON concur.